UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-24020-MC-O'SULLIVAN

IN THE MATTER OF THE EXTRADITION
OF
JONATHAN OCTAVIO NUNEZ

_____/

## ORDER

THIS MATTER came before the Court on Jonathan Octavio Nunez's Motion to Dismiss Complaint and Quash Warrant Requesting Extradition (DE # 26). Having reviewed the applicable filings and the law, it is

ORDERED AND ADJUDGED that Jonathan Octavio Nunez's Motion to Dismiss Complaint and Quash Warrant Requesting Extradition (DE # 26) is **DENIED** for the reasons set forth herein.

## BACKGROUND & FACTS

This proceeding stems from Jonathan Octavio Nunez's (hereinafter "Nunez") alleged shipment into Japan approximately 30,000 MDMA (ecstacy) tablets, 20,000 mixed MDMA/methamphetamine tablets and 136 grams of methamphetamine. (DE # 1 at 2.) The drug shipment was divided into two parcels. *Id.* Nunez is accused of recruiting two former U.S. Navy crew members, William Jenkins (hereinafter "Jenkins") and Babe Cole (hereinafter "Cole") to receive the parcels. (DE # 18 at 98, 163.) Nunez was discharged from the United States Navy after testing positive for drugs. (DE # 16 at 2 n.1.) The former crew members worked as civilian employees at the U.S. Naval

1

Base in Yokosuka, Japan.  (DE # 18 at 49.)  The parcels were to arrive at the naval base.  *Id*. at 148, 110.

The drug packages arrived in Japan on July 29, 2004 and were seized by Japanese Customs.  *Id*. at 41, 68.  Tokyo Regional Immigration Bureau's entry/exit records show that Nunez left Japan on July 12, 2004 and returned to Japan on July 29, 2004.  *Id*. at 215.  The parties have not presented evidence of Nunez's whereabouts during this period.  According to statements of the former crew members, Nunez telephoned them on July 29, 2004 and was advised that they had not received the packages.  *Id*. at 100, 116, 122, 157.  Cole stated that Nunez called him again on August 2, 2004 and August 3, 2004 and he advised Nunez that the packages were not received.  *Id*. at 100, 116.  On August 3, 2004, Nunez booked a round-trip flight to the United States.  *Id*. at 73.  Cole and Jenkins were arrested on August 5, 2004 in connection with the intercepted drug packages.  *Id*. at 49, 152.  Nunez's flight departed from Japan on August 6, 2004.  *Id*. at 73, 215.  Nunez was due to return to Japan on September 6, 2004 but did not return as scheduled.  *Id*. at 40, 73; (DE # 28 at 1157).

An arrest warrant for Nunez was issued by a judge in Japan on August 11, 2004 and the warrant was subsequently renewed 24 times.  (DE # 28 at 1157.)  Nunez traveled several times outside the United States after he left Japan in August of 2004.  (DE # 26 at 6.)  Nunez indicates that while he was told by Customs that he had an issue in Japan, they never told him he had a pending arrest warrant.  *Id*.

On November 5, 2010, this Court issued a complaint for the provisional arrest of Nunez with a view towards extradition at the request of the United States, acting on

behalf of the Government of Japan.  (DE # 1.)  The complaint indicates that the Government of Japan issued a warrant for Nunez's arrest for his alleged involvement in a conspiracy to illicitly import narcotics into Japan for profit-making, in violations of Item 1, Paragraph 1 and Paragraph 2 of Article 65 of the Narcotics and Psychotropics Control Law; and of Paragraphs 1 and 2 of Article 41 of the Stimulants Control Law.  *Id.*  On November 15, 2010, Nunez was arrested pursuant to an arrest warrant issued by this Court in conjunction with the issuance of the extradition complaint.  (DE # 17.)

On December 7, 2010, Nunez moved to dismiss the complaint for extradition and quash the warrant requesting extradition.  (DE # 26.)  On December 23, 2010, the government filed its response.  (DE # 34.)  On January 5, 2011, Nunez filed his reply to the government's response to his motion to dismiss.  (DE # 40.)

## ANALYSIS

Nunez seeks to dismiss the extradition complaint on the ground that the statute of limitations has run because the Government of Japan has not issued an indictment or an information within the permissible time period.  Pursuant to Article IV(1.)(3) of the extradition treaty between the United States and Japan, an "Extradition shall not be granted . . . when the prosecution of the offense for which extradition is requested would be barred by lapse of time, under the laws of the United States."  (DE # 18 at 10-11.)  18 U.S.C. § 3282 provides that "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  The government agrees with Nunez that 18 U.S.C. § 3282 is the applicable provision for the

statute of limitations in this case.  Further, the parties do not dispute that the conduct at issue took place in July-August of 2004.  Nunez argues that the Japanese authorities should have issued an indictment by August of 2009 but that they have not done so.  The government argues that the statute of limitations has been tolled due to Nunez's flight from justice and the issuance of an arrest warrant for Nunez in Japan.

## I. **Tolling of the Statute of Limitation by the Issuance of the Arrest Warrant**

The government argues that the statute of limitations stopped running when Japanese authorities issued its initial arrest warrant for Nunez on August 11, 2004.  Since the parties do not dispute that the conduct at issue took place between July and August of 2004 and the initial arrest warrant was issued on August 11, 2004, there would be no question as to the timeliness of Japan's extradition request if the issuance date of the arrest warrant is used to determine whether the statute has run.

Nunez argues that since the extradition treaty between the United States and Japan states that an extradition request from Japan should not be granted when the prosecution of the offense for which the extradition is requested would be time barred under United States law and the applicable statute, 18 U.S.C. § 3282, provides that an indictment or information needs to be issued within five years of the offense conduct, the Court must look at the date of any indictment, not the date of the arrest warrant.  (DE # 18 at 10-11.)  However, the government argues that Nunez's argument that he has not been charged by a Japanese indictment is not well taken given that the Japanese instrument translated in the extradition materials as an "indictment" retroactively loses its validity if it is not served on the accused within two months and is an instrument that is distinguishable from what is understood to be an indictment found

in the United States. The government argues that the Japanese procedures do not mirror that of the United States but have variances such as charging absent persons initially by arrest warrant and reserving indictment until the person is in custody to avoid running into an expired indictment if the person cannot be located.[1] Nunez argues that it is not necessary for the Court to examine the procedural requirements of Japan because the documents provided by the Japanese government specifically indicate that Nunez has not yet been indicted.[2]

The government cites in support of its position Ninth Circuit case law finding a Mexican arrest warrant to be equivalent to an indictment for purposes of tolling the statute of limitations in the context of an extradition. *See Sainez v. Venables*, 588 F.3d 713, 715-17 (9th Cir. 2009); *In re Extradition of Sainez*, No. 07-MJ-0177-JMA, 2008 WL 366135, at *7-8 (S.D. Cal. Feb. 8, 2008). Similar to the instant case, the foreign government in *Sainez* issued an arrest warrant shortly after the commission of the

---

[1] The government cites to the World Factbook of Criminal Justice Systems, Department of Justice Bureau of Justice Statistics which states that "Article 33 [of the Japanese Constitution] covers protection from illegal arrest: 'no person shall be arrested except upon a warrant issued by a competent judicial officer, which specifies the offense with which a person is charged . . . .'" *See* http://bjs.ojp.usdoj.gov/content/pub/ascii/WFBCJJAP.TXT at 9. The government also points out that the referenced World Factbook was cited by a district court in the Northern District of Illinois in an extradition case and the district court noted that the "United States Department of Justice, Office of Justice Programs, Bureau of Justice Statistics has compiled the World Factbook of Criminal Justice Systems which includes a report and narrative descriptions of [foreign] criminal justice system[s]." *See United States v. Nolan*, 651 F. Supp. 2d 784, 796 (N.D. Ill 2009).

[2] Nunez is referring to a statement made by a Japanese prosecutor who explains that Nunez has not yet been indicted since their procedure is not to issue their indictment until the accused is in custody because their indictment expires if it is not served on the accused within two months of issuance. (DE # 18 at 566.)

offense and the extraditee argued that the arrest warrant did not toll the statute of limitations because it does not constitute an "indictment" or "information" as set out in 18 U.S.C. § 3282.  *See In re Extradition of Sainez*, 2008 WL 366135, at *7-8.  The *Sainez* district court rejected the extraditee's argument and explained that the extraditee "[i]n essence . . . asks th[e] Court to apply the U.S. statute of limitations, which incorporates indictments, informations and common law concepts, to the Mexican judicial system, in which these concepts are unknown." *Id*.  The *Sainez* district court went on to say that "the proper calculation in applying the United States statute of limitations is from the date of the alleged offense to the date on which charges were instituted under the legal procedure of the requesting state" and determined that the statute of limitation was tolled because the arrest warrant issued within five years of the offense conduct.  *Id*.

The Ninth Circuit affirmed the *Sainez* district court's determination that the Mexican arrest warrant tolled the statute of limitations even though the text of 18 U.S.C. § 3282 refers to an indictment or information.  *See Sainez*, 588 F.3d at 717.  The Ninth Circuit examined a Second Circuit opinion and the Restatement of Foreign Relations Law and stated the following, "Consistent with the *Restatement of Foreign Relations Law,* in *Jhirad v. Ferrandina*, 536 F.2d 478, 480 (2d Cir. 1976), the Second Circuit recognized an Indian document as the 'functional equivalent of [a United States] indictment.'  We agree that for the purpose of a civil proceeding such as an extradition, a Mexican arrest warrant is the equivalent of a United States indictment and may toll the United States statute of limitations." *Id*.; *see* Restatement (Third) of Foreign

6

Relations Law § 476, cmt. e (1987) ("For purposes of applying statutes of limitation to requests for extradition . . . the period is generally calculated from the time of the alleged commission of the offense to the time of the warrant, arrest, indictment, or similar step in the requesting state, or of the filing of the request for extradition, whichever occurs first."). The Ninth Circuit explained that its determination that the Mexican arrest warrant is a functional equivalent of a United States indictment was not reached "by attempting to analogize a Mexican arrest warrant to an American indictment." *Sainez*, 588 F.3d at 717. Rather, it arrived at this conclusion by adhering to the "established approach of giving credence to foreign proceedings" and "declin[ing] to rule on the procedural requirements of foreign law out of respect for other nations' sovereignty 'and because [it] recognize[s] [that] the chance of erroneous interpretation is much greater when [it] tr[ies] to construe the law of a country whose legal system is not based on common law principles.'" *Id*. (quoting *Emami v. United States Dist. Court*, 834 F.2d 1444, 1449 (9th Cir. 1987)).

In Nunez's reply to the government's response, Nunez cites an Eighth Circuit opinion which declined to address the merits of the government's argument that an arrest order from Sweden is the functional equivalent of an indictment or information and tolls the statute of limitations but stated in a footnote that "arrest does not toll the running of the statute of limitations" and cited a D.C. Circuit case in support. *See In re Extradition of Assarson*, 687 F.2d 1157, 1161-62 n.8 (8th Cir. 1982) (citing *Powell v. United States*, 352 F.2d 705, 707 n.5 (D.C. Cir. 1965)). The D.C. Circuit opinion cited in *Assarson* was not in the context of an extradition nor involved considerations of the

7

laws and procedures of a foreign nation but rather addressed a question of whether a delay in an arrest made in the United States for an offense committed in the United States was improper. See Powell, 352 F.2d at 707.

The issuance of the arrest warrant in Japan on August 11, 2004 tolled the statute of limitations. Although there is a Japanese instrument that translates as an indictment, it is distinguishable from an indictment found in the United States. A Japanese indictment expires if it is not served within two months. Specifically, the Code of Criminal Procedure in Japan states that "when the copy of indictment fails to be served (on the accused) within two months after the prosecution has been instituted, the institution of prosecution shall lose its validity retroactively." (DE # 18 at 566.) Therefore, it makes sense, as the government points out, that the normal practice in Japan is not to issue their indictment until the accused is in custody.

Without trying to ascertain the nuances of Japanese procedures unfamiliar to this Court, the Court notes that the arrest warrant and indictment appear to work together in Japan to bring about the charge of the accused. As discussed in Sainez, the Court does not attempt to apply the United States statute of limitations to a foreign judicial system as such an attempt would be frustrated by the distinctive characteristics of each system. See Sainez, 588 F.3d at 717. Rather, this Court looks to see if the Japanese authorities charged Nunez within five years of the offense conduct through their applicable procedures and finds that they have done so. The initial arrest warrant for Nunez issued within two weeks of the offense conduct and has subsequently been renewed 24 times in what the Japanese describe as their "continued effort to pursue the suspect." (DE # 28 at 1157.) The Japanese arrest warrant was issued within five

8

years of the offense therefore the Japanese prosecution was timely commenced under the applicable United States statute of limitations.

## II. Tolling of the Statute of Limitations by Flight

The government also argues that the statute of limitations has been tolled by Nunez's flight. The statute of limitations does not extend to any person fleeing from justice. *See* 18 U.S.C. § 3290. The determination of whether a person fled from justice so as to toll the statute of limitations is a question of fact for the Court. *United States v. Fonseca-Machado*, 53 F.3d 1242, 1243 (11th Cir. 1995) (citing *Donnell v. United States*, 229 F.2d 560, 562-65 (5th Cir. 1956)). In the Eleventh Circuit, "[m]ere absence from the jurisdiction in which a crime occurred does not render a suspect a fugitive from justice; he must be found to have absented himself from the jurisdiction with the intent to avoid prosecution." *Fonseca-Machado*, 53 F.3d at 1243-44.

> In order to constitute a fleeing from justice, it is not necessary that the course of justice should have been put in operation by the presentment of an indictment by a grand jury, or by the filing of an information by the attorney for the government, or by the making of a complaint before a magistrate. It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun.

*United States v. Broe*, 695 F. Supp. 2d 1361, 1370 (S.D. Fla. 2010) (quoting *Streep v. United States*, 160 U.S. 128, 133 (1895)). The government must establish by a preponderance of the evidence that there was flight with the intent to avoid prosecution. *See, e.g., United States v. Florez*, 447 F.3d 145, 149 (2d Cir. 2006); *United States v. Greever*, 134 F.3d 777, 781 (6th Cir. 1998); *United States v. Marshall*, 856 F.2d 896, 900 (7th Cir. 1988); *United States v. Fowlie*, 24 F.3d 1070, 1072 (9th Cir. 1994).

The government argues that there is overwhelming evidence that Nunez fled in order to avoid prosecution.  The government points to the statements of Cole and Jenkins indicating that Nunez called each of them separately inquiring about the arrival of the drug packages on July 29, 2004, the day the packages arrived in Japan but were intercepted by law enforcement, and argues that these phone calls evince Nunez's knowledge of the exact date the packages were due to arrive.  (DE # 18 at 100, 116, 122, 157.)  The government also points to the statements of Cole indicating that Nunez called him on August 2, 2004 and on August 3, 2004 to follow up on the packages and that Nunez made an additional call on July 29, 2004 to ask Cole if he spoke with Jenkins.  *See id.* at 100, 116, 122.  The government argues that these repeated phone calls evince Nunez's alarm at the prospect of the drug packages being intercepted.  The government points out that Nunez booked a flight to the United States on August 3, 2004 and departed for the United States on August 6, 2004 and that Cole and Jenkins were arrested on August 5, 2004.  The government asserts that the timing of Nunez's departure from Japan demonstrates that he knew the "the jig was up" and he fled in ordered to avoid prosecution and arrest.  The government argues that Nunez booked a round-trip ticket on August 3, 2004 in order to make his travel less conspicuous even though he never returned on the scheduled return flight.  The government points out that Nunez never returning to Japan after August 6, 2004 contrasts with his immediately preceding travel pattern, where he entered and departed Japan seven times in eight months and argues that this change supports an inference of intent to avoid arrest and

prosecution.[3]  *See Jhirad v. Ferrandina*, 536 F.2d 478, 484 (2d Cir. 1976) (finding significance in an extraditee remaining out of the country he left "for a longer period than on any of his previous similar trips").  With respect to Nunez's argument that his conduct in living openly is inconsistent with someone fleeing from justice, the government points out that courts have found persons living openly to have nonetheless fled justice with the intent to avoid arrest or prosecution.  *See Fonseca-Machado*, 53 F.3d at 1243; *Fowlie*, 24 F.3d at 1072; *In re Extradition of Assarson*, 687 F.2d 1157, 1161 (8th Cir. 1982).

Nunez argues that the testimony of Cole stating that Nunez called him twice on July 29, 2004 and once on August 2, 2004 and August 3, 2004 and the testimony of Jenkins indicating that Nunez called him once on July 29, 2004 do not support the alarmed state that the government argues Nunez was in prior to his August 6, 2004 departure.  Nunez finds suspect Cole's statement that Nunez called him from a pay phone given all their prior dealings where Nunez called Cole from his cell phone and indicates that there is a lack of phone records corroborating the testimony of Jenkins

---

[3] The government also argues that Nunez's conduct is sufficient to constitute "constructive flight."  *See United States v. Fonseca-Machado*, 53 F.3d 1242, 1244 & n.4 (11th Cir. 1995) ("The Government claims that a person who departs for a legitimate reason from the jurisdiction in which his crime was committed but who later remains outside that jurisdiction for the purpose of avoiding prosecution is a fugitive from justice.  This theory, known as the doctrine of constructive flight, has been used in other circuits for the purpose of tolling the statute of limitations pursuant to § 3290.  This court has applied the doctrine in a non-§ 3290 context." (citing *Schuster v. United States*, 765 F.2d 1047, 1050 (11th Cir. 1985); *United States v. Catino*, 735 F.2d 718 (2d Cir. 1984); *United States v. Gonsalves*, 675 F.2d 1050 (9th Cir. 1982))).  Nunez argues that there is insufficient evidence to demonstrate that he became aware of an arrest warrant or impending prosecution.  Because the Court finds that the government met its burden with respect to showing actual flight, the Court will not address the constructive flight argument.

and Cole regarding Nunez's phone calls to them on July 29, 2004, August 2, 2004 and August 3, 2004. Nunez attached to his reply an affidavit of a family friend who stated that she understood that a police officer at the airport told Nunez to have her paged when Nunez had trouble locating her when she arrived in Japan on August 4, 2004 and argues that this conduct is inconsistent with someone who is "laying low" and trying to avoid detection by law enforcement two days prior to his flight. Nunez also argues that he planned to eventually return to his home in the United States and attached to his reply e-mails he sent to his father in June and July of 2003 discussing a move to the United States around the summer of 2004. Further, Nunez asserts that he did not secretly leave Japan but rather presented identifying information to Japanese authorities and that he has been living openly and traveling abroad since his move to the United States. Nunez attached to his reply the affidavit of his father who corroborates Nunez's contention that he never knew the details of the investigations in Japan and that during his travel abroad after his departure from Japan, Immigration authorities would inform him about the existence of a potential issue in Japan, but did not provide Nunez any further details.

   The Court finds that the government has demonstrated by a preponderance of the evidence that Nunez left Japan on August 6, 2004 with the intent to avoid prosecution. Nunez's conduct in arriving in Japan on the same day as the intercepted drug packages, in booking a round-trip flight just three days prior to his permanent departure to the United States, the statements of Cole and Jenkins indicating that Nunez called them to check on the arrival of the drug packages and Nunez's departure the day after Cole and Jenkins were arrested convince the Court that Nunez fled in

12

order to avoid prosecution.  Nunez argues that it is plausible that a round-trip ticket was booked because it was cheaper than a one-way ticket.  However, if cost is an important factor, one would expect that Nunez would not book an international flight a mere three days prior to departure.[4]

The Court has considered the affidavit of the family friend who indicated that it is her understanding that a police officer told Nunez to have her paged when Nunez had trouble locating her at the airport.  The Court also reviewed the e-mails Nunez sent to his father that support his argument that he had been planning to move back to the United States all along.  Nevertheless, the Court finds suspect the circumstances surrounding Nunez's departure from Japan.  Had the August 6, 2004 flight been booked ahead of time rather than three days prior to departure and was not within days of the drug packages being intercepted, Nunez's argument that the departure was all pursuant to his prior plan to move to the United States would be more persuasive.  *See Florez*, 447 F.3d at 153 (finding that the district court reasonably concluded from the totality of the evidence that the defendant fled at that time with the specific intent to avoid arrest and prosecution despite arguments that the disappearance was coincidental);*United States v. Martin*, 426 F.3d 68, 77 (2d Cir. 2005)  ("The fact that an innocent explanation may be consistent with the facts alleged" does not negate the court's factual finding (internal quotation and citation omitted)).  Finally, with respect to Nunez's arguments

---

[4] Nunez also argues that Cole's statement that Nunez called him from a pay phone is suspect given all their prior dealings where Nunez called him from his cell phone.  The Court notes that it is plausible to infer that Nunez made those calls from a pay phone rather than his cell phone in order to make it more difficult for law enforcement to establish his contacts with Cole and Jenkins.

regarding living openly and not knowing about the proceedings in Japan, the Court notes that since no proceedings have to be initiated before one can be considered to have fled from justice, he need not have knowledge of them nor is living in secrecy a prerequisite to a finding of flight from justice.  See *Broe*, 695 F. Supp. 2d at 1370; *Fonseca-Machado*, 53 F.3d at 1243; *Fowlie*, 24 F.3d at 1072; *In re Extradition of Assarson*, 687 F.2d at 1161.

## **CONCLUSION**

Based on the foregoing, Jonathan Octavio Nunez's Motion to Dismiss Complaint and Quash Warrant Requesting Extradition (DE # 26) is DENIED.[5]

DONE AND ORDERED, in Chambers, at Miami, Florida this 26th day of January, 2011.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel of record

---

[5] Nunez requested an evidentiary hearing in connection with his motion to dismiss and quash.  A hearing is not necessary as the Court has considered the unrefuted affidavits provided by Nunez and they do not alter the outcome of the Court's decision on his motion.